UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-11290
Summary Calendar
_____


In the Matter of DIMITRIOS BELAVILAS,

                              Debtor.

_____


DIMITRIOS BELAVILAS,

                              Appellee,

                  versus

NIKOLAOS BILILIS,

                              Appellant.


_____

Appeal from the United States District Court for the
Northern District of Texas
(4:93-CV-380-Y)
_____

May 28, 1997

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

     This is an appeal from a final order of the district court,

_____

[*]  Pursuant to Local Rule 47.5, the court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in Local Rule 47.5.4.

sitting as a court of appeals in bankruptcy. The appellant challenges the district court's affirmance of various orders of the bankruptcy court. We have jurisdiction under 28 U.S.C. § 158(d). We review a bankruptcy court's fact findings for clear error, and its legal conclusions *de novo*. *Affiliated Computer Systems, Inc. v. Sherman (In re Kemp)*, 52 F.3d 546, 550 (5th Cir. 1995).

The debtor, Dimitrios Belavilas, owed his former business partner Nikolaos Bililis on a pair of notes, which Bililis had acquired from the lender bank. The notes were secured by real property in Arlington, Texas, on which a partnership consisting of the debtor, Bililis, and Athanasios Boutris had opened a restaurant. Almost immediately, disputes arose and the partnership crumbled. The debtor filed this adversary proceeding to determine how much he owed Bililis on the notes. In answering that question, the bankruptcy court relied on various factual findings of the Texas state courts in prior litigation concerning the dissolution of the partnership and disposition of the real property.

In an order and a memorandum opinion entered December 23, 1992, the bankruptcy court calculated that the debtor owed Bililis $103,374.61 in principal. The bankruptcy court left open the question whether Bililis was entitled to interest as well. Stating that Bililis had "failed to provide the Court with an argument in support of that entitlement or with the dollar figure of the amount of interest to which he is entitled," the court gave Bililis

2

additional time to justify his demand for interest.

Bililis subsequently submitted an application for interest. However, the bankruptcy court, in an order entered April 29, 1993, held this application inadequate. The court found that Bililis had "failed to provide the information necessary to calculate the interest accrued and owing." Consequently, no interest was awarded. The district court affirmed.

On appeal to this court, Bililis claims that the bankruptcy court clearly erred by finding that no interest could be awarded based on his application. Our analysis of this claim will be aided by a brief review of the relevant chronology.

The partnership was formed in March 1986, with each partner entitled to one-third of the anticipated profits and responsible for one-third of the liabilities. Disputes swiftly consumed the partnership, which was dissolved on or about May 6, 1986. Each partner remained individually liable for one-third of the payments on the notes.

Bililis, after an initial attempt to buy out the debtor, instead bought the notes from the bank on June 13, 1986. Bililis thus became a secured creditor and lienholder on the property. On February 13, 1989, the debtor bought out Boutris, acquiring a two-thirds share of the property. On May 2, 1989, the debtor bought Bililis' share; this made the debtor the sole owner of the property, subject to the notes held by Bililis. On September 7,

1989, the debtor filed a Chapter 13 bankruptcy petition.

In his application to the bankruptcy court for interest, Bililis correctly stated that under the terms of each note, interest was to be added daily to the outstanding principal at a rate equal to the prime rate plus one percentage point. He submitted a prime rate schedule--which had already been received in evidence--for all relevant time periods. He requested pre-petition interest for the period from July 1, 1986, just after Bililis bought the notes, to August 31, 1989, just before the debtor filed for bankruptcy. Based on the fluctuating prime rate and the principal outstanding, Bililis calculated that he was entitled to $39,8244.03 in pre-petition interest. He also requested $14,319.86 in penalties for late payment.[1]

In response the debtor argued that no interest was owed, at least for the period before May 2, 1989. This argument rested on a state appeals court's finding that he was not in default on the notes and did not owe Bililis any money for this period. The state court found that for nearly three years, the debtor, though a one-third owner of the property, had been excluded from it by his former partners. The court found that the debtor was owed rental credits which exceeded his total monthly payments of principal plus interest on the notes. Consequently, no interest was due.

The holding of the state court is dispositive; Bililis will

---

[1]Bililis also requested post-petition interest. That request is not at issue in this appeal.

4

not be permitted to relitigate the issue. No interest will be awarded for the period from July 1, 1986 to May 2, 1989.

In a supplemental response to Bililis' interest application, however, the debtor conceded "that interest should be earned on the notes from May 2, 1989." Despite the parties' apparent agreement that interest was owed for the period from May 2 to August 31, 1989, the bankruptcy court stated that it "was unable to determine the interest from the information supplied by Bililis." Accordingly, no interest was awarded. The district court affirmed.

We hold that the bankruptcy court committed clear error. The court should have been able to calculate the interest owed on the notes by the debtor for the period May 2 to August 31, 1989. The court did not state what, if anything, was missing from Bililis' application.[2] It appears to us that interest could readily have been determined from the principal amount, the prime rate schedule, and the notes themselves, which specified that interest was to accrue daily at one percent over the prime rate.

Moreover, Bililis submitted a table purporting to show, for each month from July 1986 to August 1989, the number of days in the month; the interest rate; and the total amount owed (principal plus interest). We express no opinion as to the accuracy of these calculations; we only suggest that it is well within the competency of the bankruptcy court to review them and award an appropriate

---

[2]Nor did the bankruptcy court conclude that there was some affirmative legal bar to Bililis recovering interest on the notes.

amount of pre-petition interest.[3]  We emphasize, however, that the award should be limited to the period May 2 to August 31, 1989.[4]

Bililis' other arguments are without merit.  He argues that based on the prior state court opinions, the debtor was not entitled to rental credits for the use of the property.  He asserts that the district court erred by affirming the bankruptcy court's allowance of such credits.  This argument misconstrues the state court opinions, which made clear that the debtor was entitled to rental credits for the months when he owned one-third of the property but was denied use of it by Bililis and Boutris.

Bililis' final contention concerns certain offsets he raised in bankruptcy court against the debtor's claim of usury.  The debtor asserted in an amended complaint that the interest sought by Bililis was usurious.  In response, Bililis asserted a claim for $20,000, representing money he had lent the debtor to finance the debtor's stake in the partnership, and a claim for $140,000, representing personal property of the former partners that the debtor allegedly "converted" after regaining access to the

---

[3]Bililis calculated that he was owed $1,459.79 for May 1989; $1,427.70 for June; $1,430.65 for July; and $1,385.08 for August. Assuming Bililis calculated these figures correctly, the amount of interest for May is necessarily overstated, as it was based on a 31-day month.  The binding judgment of the state court precludes any interest award prior to May 2, 1989.

[4]We can only surmise from the briefs and the state court opinions that once the debtor became the sole owner of the property on May 2, 1989, he was no longer excluded from it.  We assume that from that date on, he was not entitled to rental credits as an offset against the interest he owed on the notes.

6

restaurant.

The debtor moved to strike these "counterclaims," contending that they were untimely and that the sole issue in the adversary proceeding was the amount of principal and interest due on the notes, and not the amount of any unsecured debt claimed by Bililis. The bankruptcy court granted the motion to strike.

Bililis seeks to reverse that decision; in effect, he seeks to reinstate his unsecured claims against the debtor. However, Bililis has consistently characterized these claims as responsive to the debtor's usury claim alone. The bankruptcy court dismissed the usury claim without prejudice; the debtor has not appealed the dismissal of that claim. As a result, the bankruptcy court's decision to strike Bililis' offset claims is moot for purposes of this appeal.[5]

The judgment of the district court is REVERSED, and the case REMANDED with instructions to REMAND to the bankruptcy court for calculation of pre-petition interest and, if appropriate, late penalties.

---

[5]Bililis characterizes his offset claims as affirmative defenses to the debtor's usury claim. He claims that as affirmative defenses, they were not subject to the bankruptcy court's deadline for the submission of counter-claims. Even if we accepted this characterization for the sake of argument, it does not alter the fact that the bankruptcy court dismissed the usury claim, rendering the appeal of Bililis' responsive pleadings moot.